J. Virginia Peiser (Bar No. 67703)
jvpeiser@archernorris.com
Jonathan S. Lieberman (Bar No. 278058)
jlieberman@archernorris.com
ARCHER NORRIS
2033 North Main Street, Suite 800
Walnut Creek, CA  94596-3759
Telephone:    925.930.6600
Facsimile:    925.930.6620

Attorneys for Defendant
ROMA WOLDEMARIAM A/K/A ROMA MENGESHA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WESTERN NATIONAL LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ROMA WOLDEMARIAM A/K/A ROMA MENGESHA AND YOHANNES RUSSOM WELDEMICHAEL AS THE POWER OF ATTORNEY FOR LETENGUS RUSSOM WELDEMICHAEL,<br><br>Defendants. | Case No.  CV 11 6668 YGR<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Hearing Date:  December ___, 2012<br>Time:              2:00 p.m.<br>Dept:              Civil Law and Motion<br><br>Action Filed:  December 28, 2011 |

**I.
INTRODUCTION**

The instant Interpleader action involves two competing claims to the proceeds of a decedent's annuity.  The moving party, Defendant Roma Woldemariam is the sole living named beneficiary of the annuity.  Defendant Letenegus Russom Woldemicael is not a named beneficiary, and her sole basis for her claim to the annuity proceeds is the fact that she was found

to be an omitted spouse in the decedent's California probate action.

Under California law, an omitted spouse is only entitled to a portion of the decedent's probate estate, and property that is transferred by a testamentary instrument, such as the instant annuity, is not part of that probate estate. Letenegus Russom Woldemicael therefore has no basis for her claim to the annuity proceeds, and this Court should grant the instant motion for judgment on the pleadings.

## II.
## FACTUAL BACKGROUND

This interpleader action seeks to determine the beneficiary of an annuity policy held by the decedent, Nega Medhin ("Nega" or the "decedent"). On or about August 5, 1985, Nega entered into a Release and Settlement Agreement (the "Annuity") with a certain defendant and its insurers, in settlement of personal injury claims asserted by Nega whereby Nega became entitled to periodic payments through the year 2030. (Complaint, ¶ 11, Exhibit C). The Annuity provided that any payments to be made pursuant to the Annuity after the death of Nega shall be made to Defendant Roma Woldemariam a/k/a Roma Mengesha ("Roma"), Nega's mother, and Berhe Gebre-Medhin, Nega's father, as beneficiaries. (*Id.*, ¶ 13, 14). The Annuity further provides that should Berhe Gebre-Medhin predecease Roma, all payments due under the Annuity shall be made to Roma. (*Id.*, ¶ 14).

The decedent and Letenegus Russom Woldemicael ("Letenegus") married on April 29, 2001 (Complaint, Exhibit H). Although Nega and Letenegus were married, Letenegus was not a named beneficiary of the Annuity. (*Id.,* ¶ 14). On April 2, 2008, Nega died without ever amending the beneficiary designation of the Annuity, despite seven years and ample opportunity to do so. (*Id.,* ¶¶ 14, 16, Exhibit E).

Berhe Gebre-Medhin died on September 29, 1987, and Roma is therefore the sole living designated beneficiary of the Annuity. (Complaint, ¶¶ 14, 16, Exhibit F). Roma submitted to Western National the Death Certificate of Berhe Gebre-Medhin and Death Claimant's Statement dated April 22, 2008, claiming an interest in the Annuity. (*Id.*, ¶ 16). On June 23, 2008, Western National received a letter wherein Letenegus, through her brother and Agent under a power of

attorney Yohannes Russom Woldemicael ("Yohannes"), made a claim to the Annuity, and attached her marriage certificate to Nega in support thereof.[1] (*Id.*, ¶ 17, Exhibit H).

Western National Life Insurance, the annuity holder, filed the instant interpleader action on December 28, 2011 alleging to be an innocent stakeholder with competing claims to the annuity funds. (*Id.*, ¶ 19). Yohannes, as the Agent of Letenegus, did not respond to the complaint, despite proper service, and this Court took Letenegus' default. Western National thereafter filed a motion for entry of default judgment and on the eve of the hearing, Yohannes, as the Agent of Letenegus, filed a motion to set aside the default judgment. This Court granted said motion and Letenegus filed an answer, in which she prayed that "the court award and order Plaintiff to pay Letenegus, through her power of Attorney Yohannes, all amounts owing from the Annuity as the omitted spouse of the deceased Annuitant." (Answer, p. 6, ¶1). Because Letenegus' sole claim to the Annuity proceeds is based on the fact that she is an omitted spouse, because California law provides only that an omitted spouse can recover from a decedent's probate estate, and because the Annuity proceeds are not part of that estate, Roma brings the instant motion for judgment on the pleadings.

## III.
## LEGAL ARGUMENT

### A.   This Court Has Authority to Grant Judgment on the Pleadings.

Under Federal Rule of Civil Procedure 12(c), any party may move for judgment on the pleadings at any time after the pleadings are closed but within such time as not to delay the trial. Fed. R. Civ. P. 12(c). Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990). When brought by the defendant, a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is a "means to challenge

---

[1] In the decedent's probate action in Alameda County Superior Court, Case No. RP08388069, Letenegus was adjudicated an omitted spouse under California Probate Code § 21610 and was therefore awarded one-half of Nega's estate.

1  the sufficiency of the complaint after an answer has been filed." *New. Net, Inc. v. Lavasoft,* 356
2  F. Supp. 2d 1090, 1115 (C.D. Cal. 2004).  A motion for judgment on the pleadings is therefore
3  similar to a motion to dismiss.  *Id.*

4      "For the purposes of the motion, the allegations of the non-moving party must be accepted
5  as true, while the allegations of the moving party which have been denied are assumed to be
6  false."  *Id.*  When ruling on the motion to strike, the Court may consider any materials properly
7  attached to the pleadings as exhibits.  *Amfac Mtg. Corp. v. Arizona Mall of Tempe, Inc.*, 583 F.2d
8  426, 429 & n.2 (9th Cir. 1978); Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is
9  an exhibit to a pleading is a part thereof for all purposes."); *Commercial Money Ctr., Inc. v.*
10 *Illinois Union Ins. Co., 508 F.3d 327, 335* (6th Cir. 2007) (documents attached to pleadings
11 became part of pleadings and could be considered on motion for judgment on pleadings without
12 converting motion to one for summary judgment).  Based upon this authority, the Court can
13 consider documents, exhibits, and any other information properly submitted with the pleadings in
14 this action.

15 **B.    California Law Governs This Action**

16      The instant action is brought in federal court in diversity jurisdiction cases under 28
17 U.S.C. § 1332(a)(3) pursuant to Rule 22 of the Federal Rules of Civil Procedure and 28 U.S.C. §
18 1335(a)(1).  Complaint, ¶¶ 1, 2.  Federal courts sitting in diversity jurisdiction cases apply state
19 substantive law and federal procedural law.  *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415,
20 416 (1996).  A federal court applying California law must do so as it believes the California
21 Supreme Court would apply it.  *Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219,
22 1222 (9th Cir. 2003).  Thus, the Federal Rules of Procedure govern the procedural aspects of this
23 action and the Court must apply the California Probate Code to determine whether or not
24 Letenegus has a claim to the Annuity as an omitted spouse.  In doing so, and in taking the
25 allegations on the face of the pleadings and attached exhibits as true, it is clear as a matter of law
26 that Letenegus has no claim to the Annuity and the Court should enter judgment on the pleadings
27 in favor of Roma.

28

**C.     Letenegus' Has No Valid Claim to the Annuity Proceeds Because the Omitted Spouse Doctrine is Inapplicable**

Under California law, Letengus does not have a meritorious claim to the Annuity proceeds. She does not allege in her answer that she is named as a beneficiary in the Annuity, and the face of the Complaint makes clear that Roma is the sole named beneficiary still living. (Complaint, ¶¶ 14, 16, Exhibit E). Moreover, Nega had almost seven years after his marriage to Letenegus to change the beneficiary of the Annuity, but did not. Letenegus' claim to the Annuity proceeds is solely based on her claim as an omitted spouse.

California Probate Code § 21610 states:

> [I]f a decedent fails to provide in a [will or revocable trust] for the decedent's surviving spouse who married the decedent after the execution of all of the decedent's testamentary instruments, the omitted spouse shall receive a share in the decedent's *estate*, consisting of . . . [a] share of the separate property of the decedent equal in value to that which the spouse *would have received if the decedent had died without having executed a testamentary instrument*, but in no event is the share to be more than one-half the value of the separate property *in the estate* (emphasis added).

Probate Code § 21601(a) defines estate as "a decedent's probate estate and all property held in any revocable trust that becomes irrevocable on the death of the decedent." Under these statutes, Letenegus was adjudicated an omitted spouse under California Probate Code § 21610 in the probate action in Alameda County Superior Court, Case No. RP08388069, and was therefore awarded one-half of Nega's probate estate. Notably, the Probate Court did not adjudicate the proceeds of the Annuity as part of the decedent's estate.

In California, a decedent's probate estate <u>does not</u> include interests which terminate upon his or her death, e.g., due to a survivorship right in a third party such as joint tenancy or due to the right of a named beneficiary to funds upon death of the trustor. Probate Code § 5000 makes clear that property which has been disposed of by provision for nonprobate transfer in a written instrument is excluded from the probate estate. *Estate of Petersen*, 28 Cal.App.4th 1742, 1746 (1994); *Estate of Allen*, 12 Cal.App.4th 1762, 1767-688 (1993).

Though an annuity is not specifically listed in Probate Code section 5000, Law Revision Commission comment, 53 West's California Annotated Probate Code, section 5000 (1994 pocket

Supp.) page 17, states that section 5000 "is intended broadly to validate written instruments that provide for nonprobate transfers on death. . . ." and should not be limited to the types of written instruments listed in the section. As the *Estate of Peterson* court said, "**annuity contracts . . . fit the broad description of section 5000** and the written instructions for payment to the survivor upon the death of the other owner or spouse should be given effect." *Estate of Petersen*, 28 Cal.App.4th 1742, 1751 (1994).

In *Estate of Peterson*, the second wife of the decedent argued that the beneficiary's right in an annuity contract controlled, despite California law dictating that a decedent retains his one-half interest in community property, which in that case was used to purchase the annuity. In rejecting the appellant's argument that half of the annuity proceeds became part of the decedent's probate estate, the Court held that "the language in the annuity contracts which provides for payment to the survivor upon the death of the other owner or spouse is sufficient to establish a nonprobate transfer of funds to respondent." *Id.* at 1753.

In *Estate of Allen*, the California Court of Appeal affirmed a judgment of the probate court, holding that funds in a Totten trust account belonged to the named beneficiary upon the decedent's death because the Totten trust was not a part of the testator's estate. The court held that the decedent's estate does not include interests which terminate upon the decedent's death due to a survivorship right of a named beneficiary.

The *Estate of Peterson* and *Estate of Allen* decisions are supported by a host of California cases which hold the same. For example, in *Estate of Welfer*, 110 Cal.App.2d 262 (1952), a testator father named his minor son as one of the beneficiaries of a life insurance policy. His will, however, provided that the proceeds of the insurance policy be administered by testator's widow, his second wife, for care and education of the minor son. After the testator's death, both the minor's mother and testator's widow filed petitions for appointment as guardian of the minor's estate, consisting solely of the life insurance proceeds. The California Court of Appeal rejected the widow's petition on the basis that the proceeds were governed by a contract of insurance rather than by the law of succession. *Id.* at 265. Therefore, the court found that the law of succession and the will provisions were not applicable to the proceeds of the insurance policy

1  because the proceeds <u>do not</u> become a part of the estate of the insured. *Id.* (emphasis added).
2  Therefore, "the law of descent and distribution has no applicability to such cases." *Id. See also*
3  *Turner v. Metropolitan Life Ins. Co.*, 56 Cal.App.2d 862, 865 (1943); *Heydenfeldt v. Jacobs*, 107
4  Cal. 373, 377 (1895).
5       In *Estate of Ettlinger*, 73 Cal.App.2d 967 (1946), a widow sought review of a lower court
6  judgment decreeing that she was put to an election between taking property left to her by her
7  husband's will and asserting her community interest in the proceeds of life insurance policies.
8  She argued that she need not make such an election, as the words "possessed by me, or in my
9  name or under my control" in the will were broad enough to include testator's life insurance. The
10 Court noted, as is the case here, that there was no contention that the testator undertook or
11 intended to dispose of the life insurance by his will. *Id.* at 969. In reading the will as a whole, the
12 Court adjudged that it was limited to the property in the estate which was actually disposed of by
13 the will, which the Court found did not include the life insurance policies. *Id. See also Estate of*
14 *Hobart*, 82 Cal.App.2d 502, 507 (1947) [surviving spouse did not become the sole owner of the
15 joint tenancy interest in the securities by descent but by survivorship in the original grant creating
16 the tenancy."]; *Estate of Pezzola*, 112 Cal.App.3d 752, 757 (1980) [joint tenancy properties and
17 life insurance proceeds were properly excluded in computing the value of the whole estate]; *Bank*
18 *of America etc. Assn. v. Hazelbud*, 21 Cal.App.2d 109, 115 (1937) [the beneficiary, not omitted
19 surviving spouse, was entitled to funds in trust account]; *Estate of Davis*, 171 Cal.App.3d 854,
20 858 (1985) [IRA accounts do not become an asset of a probate estate subject to the claim of a
21 judgment creditor but instead should be paid to the named beneficiary].
22       California law is clear that when a decedent grants survivorship rights in property to a
23 third party through execution of a beneficiary designation, such as in an insurance policy or an
24 annuity, the property does not become part of the decedent's estate. Instead, the terms of the
25 document govern in contract, and the property passes to the designated beneficiary upon the
26 decedent's death. Applying this rule to the instant case, Roma, as the sole living beneficiary
27 named in the Annuity, is entitled to the funds. Letenegus has no valid claim. The omitted spouse
28 rule set forth in California Probate Code § 21610 is inapplicable because the annuity proceeds are

separate and distinct from the decedent's probate estate. Letenegus therefore has no basis to recover any portion of the Annuity proceeds.

## IV.
## CONCLUSION

For the foregoing reasons, Defendant Roma Woldemariam a/k/a Roma Mengesha respectfully requests that this Court grant her Motion for Judgment on the Pleadings.

Dated: November 20, 2012                    ARCHER NORRIS


                                            */s/ J. Virginia Peiser*
                                            J. Virginia Peiser
                                            Jonathan S. Lieberman
                                            Attorneys for Defendant
                                            ROMA WOLDEMARIAM A/K/A ROMA
                                            MENGESHA

M0303001/1472498-1